685 So.2d 861 (1996)
Stephan BITTERMAN and Howard Bitterman, as co-personal representatives of the Estate of Irving Bitterman, deceased, Appellants,
v.
Annette BITTERMAN, Appellee.
Stephan BITTERMAN and Howard Bitterman, as co-personal representatives of the Estate of Irving Bitterman, deceased, Appellants,
v.
Patrick H. WEIDENBENNER, Peter Matwiczyk and Boose Casey Ciklin Lubitz Martens McBane & O'Connell, Appellees.
Nos. 94-0411, 94-0412.
District Court of Appeal of Florida, Fourth District.
October 2, 1996.
Rehearing, Rehearing, Certification of Leave to Appeal, and Certification of Conflict Denied January 23, 1997.
*862 George P. Ord, Palm Beach, and Stephan Bitterman of Sloatsberg, New York, for appellants.
Benjamin Brown of Mettler & Matwiczyk, Palm Beach, for Appellee-Annette Bitterman.
Brian B. Joslyn and Ronald E. Crescenzo, of Boose Casey Ciklin Lubitz Martens McBane & O'Connell, for Appellee-Boose Casey, et al., West Palm Beach, and Peter Matwiczyk of Mettler & Matwiczyk, Palm Beach, for Appellee-Peter Matwiczyk.
Rehearing, Rehearing En Banc, Certification of Leave to Appeal, and Certification of Conflict Denied January 23, 1997.
SHAHOOD, Judge.
This opinion addresses two appeals arising out of the administration of the estate of Irving Bitterman, which were not consolidated. The first appeal (case no. 94-0411) is from the final judgment awarding attorney's fees and costs to appellee, Mettler & Matwiczyk. The second appeal (case no. 94-0412) is from the final judgment awarding attorney's fees and costs to appellee, Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell. On all issues, in both cases, we affirm the trial court.
Irving Bitterman died on July 21, 1991 leaving an estate in excess of one million dollars. Pursuant to the will, Howard Bitterman and Stephan Bitterman[1], the decedent's sons, were appointed co-personal representatives of the estate, and were initially jointly represented by John Severson, Esq. From the early stages, the administration of the estate was an embittered conflict among Annette Bitterman, the surviving spouse, Stephan Bitterman, and Howard Bitterman over the interpretation of certain provisions of the decedent's will. In addition, Stephan Bitterman either raised objections, or threatened to object, to items such as his mother's petition for family allowances, her continued use of an automobile titled in the decedent's name, her petition for homestead to obtain title to the home in which she was living, and her retention of certain personal property. Howard Bitterman did not have any objections to the above items and, in fact, thought *863 that his brother was treating his mother unfairly.[2]
Due to the brothers' continued disagreements over the administration of the estate, Mr. Severson withdrew based on conflicts, and each hired separate counsel. Howard Bitterman retained Pat Weidenbenner ("Weidenbenner"); Stephan Bitterman retained appellee, Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell ("Boose, Casey").

A. FEES OF ADMINISTRATOR AD LITEM
In June 1992, the brothers were deadlocked with respect to the administration of the estate, and all parties agreed to the probate court's appointment of appellee, Peter Matwiczyk ("Matwiczyk"), an experienced board certified attorney, to serve as administrator ad litem. Matwiczyk retained his law firm, Mettler & Matwiczyk, to act as his counsel in the administration of the estate.
Following his appointment, Matwiczyk met with counsel for all parties to determine each party's respective position and whether settlement was possible. After that first meeting, Matwiczyk concluded that he "was in the middle of a hornet's nest." He therefore determined that the best way to proceed was by filing responsive pleadings to the petitions that had been filed, and scheduling hearings to force the parties to address the issues. Since settlement was clearly not an option, Matwiczyk began to take discovery to determine each party's position on the issues. The discovery process was difficult since there were six or seven different lawyers involved. The difficulty was compounded by Stephan Bitterman's failure to cooperate, which necessitated several motions to compel compliance with discovery requests.
Upon realizing "that even the smallest detail was worthy, in the parties' mind, of litigating over," Matwiczyk informed all counsel by letter of his intent to charge for his time as fiduciary, and for his counsel's time. Matwiczyk informed the parties of his intention to charge $225 per hour for his time as administrator ad litem, $175 per hour for attorney Jeffrey Rollins' time, and $200 per hour for attorney Terri Di Pasquale's time. The letter contained the following pertinent language:
If this proposal is not satisfactory to your client and to his brother, I would like each of you to let me know immediately so that I can withdraw as Administrator Ad Litem. I am not going to get myself into a position where I end up in a fee fight with Stephan and Howard over my time, my hourly rates or whether I will be compensated for any time I spend in getting Court approval for my fees.
No one objected to the terms as contained in the correspondence.
The record shows that the majority of Matwiczyk's time was spent responding to Stephan Bitterman's attempts to void certain provisions of the will and his endless discovery games as well as in defending himself against Stephan Bitterman's breach of fiduciary duty accusations. Matwiczyk set the case for trial, but on the eve of the trial (October 1992), all but one of the issues were settled; the final issue settled shortly thereafter. The settlement agreement provided, in pertinent part, as follows:
The parties agree that whatever remaining amounts are necessary to resolve and pay the requisite fee claims of each of these law firms against the Estate will be paid from funds which would otherwise be distributed to Stephan and that Stephan shall be personally liable for any remaining sum of money in excess of $143,000 necessary to resolve and pay the proper fee claims of each of these law firms against the Estate. Stephan also agrees that all expenses associated with any negotiation or litigation concerning the full proper amount of the aforementioned legal fees will be paid from funds otherwise distributable to him, in the Estate and that he shall be personally liable for these expenses.
After the settlement, Matwiczyk learned that Stephan Bitterman planned to challenge Matwiczyk's fees. In December 1992, Matwiczyk therefore petitioned the court for discharge *864 of his duties as administrator ad litem on the grounds that, although he had not completed his duties ordered by the court, his continued participation had been subject to the objections of the copersonal representatives. The court granted the motion, and reserved jurisdiction to determine fees at a later date.
At the fee hearing, both Matwiczyk's expert and Annette Bitterman's attorney testified that Matwiczyk's actions were not only reasonable in light of the dissension among the parties, but they were instrumental in moving the case toward settlement. The trial court concluded that Matwiczyk and his counsel expended a total of 190.70 hours, and that given the difficult circumstances presented by this case, the fee was reasonable and justified. The court found further, that Matwiczyk had spent a significant amount of time following his discharge in collecting his fee and that of his counsel.[3] Accordingly, the court determined that, pursuant to section 733.6171, Florida Statutes (1993), said fees are compensable from the estate assets. The court awarded Matwiczyk and his firm $39,308.04 in fees and costs.

B. BOOSE, CASEY'S FEES
In the early stages of the estate administration, Stephan Bitterman hired Boose, Casey to research the effect of Article II of the decedent's will. He also requested that the firm provide research on the propriety of each of Annette Bitterman's petitions, and eventually directed the firm to prepare objections. At the outset, Stephan Bitterman agreed to an hourly rate of $175 for attorney Brian O'Connell's ("O'Connell") services, $65 per hour for paralegal services, $135 per hour for one associate's services, and $155 per hour for another associate's services. The written fee agreement provides that Stephan Bitterman shall not be personally responsible for attorneys' fees for the estate.
In addition to doing the legal research, Boose Casey also represented Stephan Bitterman in the parties' several unsuccessful attempts at settlement. The record shows that while Annette Bitterman and Howard Bitterman suggested that the parties attempt to resolve one issue at a time, Stephan Bitterman, contrary to the firm's advice, insisted on a "global" resolution of the issues and even became so bold as to insist, as a contingency to settlement, that his mother write him into her will so that he could have some control over the money she would take from Irving Bitterman's estate. According to O'Connell, the parties were close to settlement at several times, with each attempt being ultimately thwarted by Stephan Bitterman's interjection of additional demands. At one time or another, Stephan Bitterman even threatened to bring bar complaints against each of the attorneys involved. O'Connell eventually suggested that Stephan Bitterman retain separate counsel to represent him in his capacity as beneficiary, which he did.
Stephan Bitterman became intimately involved with every detail of Boose, Casey's actions on his behalf. In fact, he directed O'Connell to forward all correspondence and pleadings to him (Bitterman) for review. According to O'Connell, on a daily basis, there were telephone calls between his firm and Stephan Bitterman to the point that Stephan Bitterman became involved with every detail. A review of Boose, Casey's phone bill indicates over 350 telephone calls between the firm and Stephan Bitterman in New York. In fact, O'Connell pointed out that Stephan Bitterman often took the liberty of calling O'Connell at his home, in his car, and even when he was on vacation.
In the summer of 1992, after Stephan Bitterman was unable to obtain the result he desired through settlement, he directed the firm to research the possibility of voiding his mother's and his brother's shares under the will, and of voiding certain provisions of the will, including Article II. Although O'Connell did not believe that there was sufficient evidence to suggest that a portion of the probated will was invalid, he nevertheless filed, at Stephan Bitterman's direction, a defense to the will construction petition stating that Article II was invalid. Although O'Connell *865 had informed Stephan Bitterman in writing that he (O'Connell) thought the pleading would be unsuccessful, he stated that he did not think it was frivolous. In that same letter, O'Connell also informed Stephan Bitterman that "the evidence available is not actionable in terms of challenging the will or a portion of it, regardless of any statute of limitations." There was evidence in the record that at one point Stephan Bitterman acknowledged the provision was clear and unambiguous.
Boose, Casey's expert testified that a reasonable hourly rate for O'Connell would range from $175 to $225, and a reasonable hourly rate for his paralegal would range from $65 to $95 per hour. Accordingly, he opined that a reasonable fee for Boose, Casey's work in this case would exceed $76,000.
The court found Boose, Casey's fees to be reasonable and entered a final judgment awarding the firm $76,542 in attorney's fees, $6,865.81 in costs, and $20,000 for attorney's fees expended collecting their attorney's fees.
Howard Bitterman and Stephan Bitterman ("the Bittermans") appeal the trial court's judgment awarding both Matwiczyk and Boose, Casey fees from the estate. Our standard of review is whether the trial court abused its discretion in finding that the fees were reasonable and necessary. In re Estate of Bryan, 576 So.2d 344 (Fla. 4th DCA 1991).
The first matter in dispute is whether section 733.617, Florida Statutes (1991), or section 733.6171(7), Florida Statutes (1993), is applicable to this case.
In 1993, the Legislature amended section 733.617, Florida Statutes (1991). What remained after the amendment was section 733.617, which applies to compensation of personal representatives, and section 733.6171, which applies to compensation for the attorneys for the personal representative. Section 733.6171(8) indicates an effective date of October 1, 1993, and directs:
(8) This section shall apply to estates in which an order of discharge has not been entered prior to its effective date but not to those estates in which attorney's fees have previously been determined by order of court after notice.
§ 733.6171(8), Fla.Stat. (1993). See Fogg v. Southeast Bank, N.A., 473 So.2d 1352, 1354 (Fla. 4th DCA 1985)(a clear statement of legislative intent may determine the retroactive effect of a statute.) This proceeding commenced in March 1993, was tried in August 1993, and was concluded in the trial court in December 1993. Clearly, it falls within the purview of section 733.6171(8), Florida Statutes (1993).
Regarding the substantive application of the statute, we find nothing which indicates an abuse of discretion on the part of the trial court with respect to either the fees of Matwiczyk and his firm or those of Boose, Casey. The trial court found that the attorneys' hourly rates and total hours expended on behalf of the estate were necessary and reasonable. See generally In re Estate of Platt, 586 So.2d 328 (Fla.1991). We find no merit in any of the Bittermans' arguments to the contrary, and decline to disturb the trial court's finding.
Likewise, we find no error in the court's award to Matwiczyk and Boose, Casey of fees incurred for time expended seeking reasonable compensation for services on behalf of the personal representative. Section 733.6171(7), Florida Statutes (1993), provides:
Court proceedings to determine compensation, if required, are a part of the estate administration process, and the costs, including fees for the personal representative's attorney, shall be determined by the court and paid from the assets of the estate. The court shall direct from which part of the estate they shall be paid.
The Bittermans maintain that since both Matwiczyk and Boose, Casey had been discharged prior to the fee proceeding, they are ineligible under the statute to obtain fees incurred in the compensation proceeding. It is the Bittermans' contention that the statute applies only to an attorney who represents the fiduciary and/or his attorney in a 733.6175 fee proceeding.
It is helpful to consider section 733.6171, Florida Statutes (1993) along with section 733.6175, Florida Statutes (1993), the statute which governs proceedings to determine *866 the propriety of employment of agents by the personal representatives and the reasonableness of their fees. We note that section 733.6171 does not distinguish between current and former agents. It merely provides that when a 733.6175 proceeding takes place, it is to be considered part of the administration process and the estate shall pay the fees for the personal representative's attorney. To limit section 733.6171 to only current counsel when its companion section, 733.6175, clearly does not place such limitations would be incongruous. Thus, we hold that a discharged attorney or fiduciary may seek reasonable compensation pursuant to section 733.6175, Florida Statutes, and may seek also fees incurred in said proceeding pursuant to section 733.6171, Florida Statutes.
Finally, we find no error in the trial court's determination of entitlement and the granting to appellees of additional fees as the prevailing parties in these fee disputes. The court specifically found that the Bittermans' objections to Boose, Casey's fees were frivolous and without merit and were asserted for the sole purpose of coercing a reduction in fees. With even more specificity, the court found that Boose, Casey was entitled to fees based on section 57.105, Florida Statutes, and as prevailing party in the fee dispute, awarded the firm additional fees.
The court further found justification for the award of the additional fees based on the holding of In re Estate of Duval, 174 So.2d 580 (Fla. 2d DCA 1965) and the application of section 733.617, Florida Statutes. We agree with the trial court's well-reasoned findings and analysis and affirm the award of additional fees to both Boose, Casey and Matwiczyk.
Addressing only that part of the final judgment which deals with the court's reliance on the Duval case, we note that the court, in awarding additional fees for the attorneys' extraordinary services, cited the following from Duval:
The presumption abides that it was the decedent's intent that his estate shall be administered according to law and its lawful obligations including expenses of administration, shall be promptly discharged when due; and this contemplates that those performing services on behalf of the estate will not be put to unnecessary expense and labor in order to be compensated therefor. The principle is well established that persons who successfully maintain legal proceedings to require a recalcitrant legal representative to perform his duties in that behalf do thereby perform a valuable service to the estate, and that the reasonable expenses incurred, including attorney's fees in the premises, are payable by the estate.

Duval, 174 So.2d at 586-87 (emphasis added).
Under the facts of these fee disputes, this Court finds the following, also from the second district in Duval, to be particularly pertinent:
Suffice it to say that the testimony of the expert witnesses, coupled with the judicial notice the trial judge was entitled to take as to the overall character of the subject estate, the administration had thereon, the ordinary services required of and work done by appellees in the estate as attorneys for appellant, and the extraordinary services required of them in consequence of the nature of appellant's steps in resisting appellees' petition for compensation, affords a proper and adequate basis for the award of attorney's fees and court costs to appellees as provided by the [trial court's order]. Implicit in said order, especially in the light of the proofs, is the proposition that appellant failed to establish, as affirmatively alleged by his "Responses" to the petition, that the fee ordinarily allowable to appellees should be reduced in any amount because of acts of omission or commission in the performance of their legal services to the estate, or otherwise. Indeed, the record fails to reveal that appellant made any serious effort by competent proofs to sustain such allegations.
Id. at 587 (emphasis added).
We therefore hold that it was in the trial court's discretion to award such additional fees to appellees for the inordinate legal effort required in obtaining a contested judgment for attorney's fees. Pirretti v. Dean *867 Witter Reynolds, Inc., 578 So.2d 474 (Fla. 4th DCA 1991); see also State Farm Fire and Casualty Co. v. Palma, 629 So.2d 830 (Fla.1993).
Based on all of the foregoing reasons expressed, we affirm the trial court in all respects in both appeals.
Affirmed.
PARIENTE, J., and ZEIDWIG, HOWARD M., Associate Judge, concur.
NOTES
[1] Stephan Bitterman is an attorney who practices in New York.
[2] It should be noted that just prior to Irving Bitterman's death, Annette Bitterman had filed a divorce proceeding against him and obtained an order that he leave the marital home.
[3] The record shows that Stephan Bitterman obtained an "eleventh hour" continuance of the first fee hearing and thereafter, in the two months that followed, filed approximately 35 pleadings which necessitated a response from Matwiczyk.